THE PEOPLE OF THE STATE OF ILLINOIS, *ex relatione* ROBERT C. BRISTOL, *v.* JOHN PEARSON.

*Motion for Re-hearing.*

A motion for a re-hearing should be made at the term of the Court in which the cause is decided, or the opinion of the Court delivered.

At this term of the Court the defendant filed the following motions and affidavit:

"John Pearson, ⎫
    *ads.*       ⎬ *For Contempt of Court.*
 The State.  ⎭

" The defendant, John Pearson, comes into this honourable Court, and moves the Court, that the judgment heretofore given in the above case, at the December term, 1841, imposing a fine of $100 on the said defendant, be again opened and re-considered, for the following reasons, to wit:

"1. The said defendant has shown, by his answer to the interrogatories put to him, at the June term, 1840, that he never intended any contempt to the Supreme Court, in not appearing in said Court, or signing a certain bill of exceptions; that, so far as the defendant was concerned, he acted under a full conviction that the Court would give him a hearing whenever the case was duly presented to them, which never was done.

The People *v.* Pearson.

"2. The said defendant has never had any chance to be heard on the merits, or to explain why he did not sign the bill of exceptions drawn by the attorney, though he did, on the trial, sign a bill of exceptions, which he then believed correct.

"3. That no legal service was ever made on him, while acting as the Circuit Court of Cook County.

"4. That, after the said defendant was imprisoned, from the 16th June, 1840, till on or about the 25th or 26th June, 1840, and was required to enter into a recognizance of $500, to appear at the December term of the Supreme Court, 1840, he, this defendant, was duly elected State Senator, and resigned his office of Judge before the said term, and, consequently, could not have done the act required of him by the peremptory writ of *mandamus*.

"5. That it was expected by this defendant, that no decision would be made in this case, according to his understanding, after the December term, 1840, until the matters were again argued under the new motion, submitted by Mr. Gatewood, his counsel, which has not been done.

"6. That the fine imposed is irregular, and, in the opinion of the defendant, contrary to the true meaning of the law in such cases.

"7. The defendant wishes now to show, by affidavit, that it was from a private letter sent by him, in consequence of sickness, to one of the judges, and by the Judge misunderstood, or in some other manner not explained, he caused the same, or a portion of it, to be filed by Jesse B. Thomas, Esq., for, and was taken as an appearance of the defendant, when no such appearance was ever contemplated by defendant, and which this defendant believes was one of the chief causes why subsequent misunderstandings have arisen in this case, and believes that if he could have explained all the facts in this case, that the Court would have seen no contempt committed by defendant.                    JOHN PEARSON.

"The following authorities are referred to by defendant:
2 Chit. Blac. side page, 111; *Ibid.* 265–66; 2 Scam. 200.  To the case Emerson *v.* Clark, 2 Scam. 490; Signing a bill of exceptions is a judicial, and not a ministerial act. Swafford *v.* Dovenor, 1 Scam. 115; The people, on the relation of Ewing, *v.* Forquer, *Breese* 68; showing that the signing of the bill of exceptions is a judicial act. The appearance was not properly entered, and there was no proper service.  A *mandamus* is a people's writ, (in England a king's writ,) and could only be served by a sheriff, or other proper officer, appointed by law to do the act.

"John Pearson,   }   Supreme Court,   } *For Contempt.*
    *ads.*   }   Sangamon County, Ill.   }
The People.   }

"John Pearson, defendant in the above entitled case, being duly sworn, deposes and says, that sometime in June, he thinks, 1839,

and during the Circuit Court of Cook county, in a case of Phillips *v.* Bristol, the counsel tendered a bill of exceptions, which this affiant did not sign, but signed one in the case, which he deemed to be correct. That, previous to that time, attempts had been made by counsel, to serve a writ of *mandamus* from the District Court of the U. S., commanding said judge to do an act which he considered he ought not to do, and this defendant, then acting as a Court, distinctly informed the counsel, Mr. Collins, and he now believes in the hearing of Mr. J. Y. Scammon, that he did not recognise this manner of service—that if it was served in the way of other process, by a proper officer, (or words to that effect,) that then it would be duly considered. That this defendant, while sitting as a Court, could not, as then advised, believe, or consider that the law, contemplated the service of these writs by an attorney in Court. After this time, and after, as this defendant believes, this, opinion was known to the counsel generally, one Justin Butterfield, an attorney of the Court, attempted, in open Court, and while the business of Court was in progress, to serve a like writ from the Supreme Court, on this affiant, and in such a manner as to be considered an intention (accompanied, as it was, with jesture and language,) to insult this affiant, then acting as the Court of said Cook county. This writ or paper was not read to, or received by this affiant, and, therefore, he did not then know its true purport; but, from a conversation with one of the attorneys, this affiant had reasons to believe it was a writ of *mandamus*, and whether conditional, or peremptory, he could not now state ; but, feeling an anxiety to let the Supreme Court know this affiant's views on this subject, and with no intention whatever to contemn its authority, and knowing, too, that this question was a new one, that is the power of the Supreme Court to grant writs of *mandamus* to the Circuit Courts of Illinois, requiring them to sign bills of exceptions, this affiant, though he had never been served, in his opinion, with notice, felt anxious to present this question to the consideration of the Supreme Court, and, with that view, attempted to reach Springfield, but was prevented by sickness, and thereupon he addressed a letter, as is now his recollection, to Judge Smith, giving him his reasons why he could not be there, and sent along with the letter some brief thoughts, as hints to Judge Thomas, if he would consent to appear and argue the question of jurisdiction over the Circuit Judges; but, unless that question was permitted to be argued, this affiant did not then intend to have the paper filed as his appearance, and such, this affiant now believes, was the well known fact, both to the Judge, and J. B. Thomas, Esq., who filed the paper ; yet J. B. Thomas, Esq. refused to appear in the case. At the next spring term of the Cook Circuit Court, J. Y. Scammon again attempted to serve a writ on this affiant, in open Court, which he there stated was a peremptory *mandamus ;* and on a rule being filed to show cause for an alleged contempt, this affiant

The People *v.* Pearson.

learned for the first time, that the Supreme Court had taken this paper, filed by J. B. Thomas, Esq., as an appearance in said Court; and this affiant gathered from the opinion quoted by J. Y. Scammon, in his answer, and for the first time seen or known by this affiant, that, in consequence of this affiant's acknowledging his appearance in that manner, that the Supreme Court had proceeded to award the writ. This affiant further believed, that it could only be from that fact, and not upon the ground that this was a good or legal service. This being the state of facts, this affiant did then believe that the last attempt to serve this writ by the attorney, in May, 1840, would not be considered a legal service; and this affiant was strengthened in this opinion, from the phraseology of the learned Judge's opinion, to which this affiant begs leave of this hon-orable Court to refer.

" This affiant now states that he was not aware that any writ of attachment had been issued against him when he left Springfield, on the 10th day of June, 1840, or that he had committed any contempt of the said Supreme Court, and was greatly surprised to be informed of that fact in Clay county, where he had gone on private business, having stayed in Shelby and Effingham counties for several days. On the return of the writ of attachment, this affiant, in answer to interrogatories, (which he wishes to read as part of his reasons in this case,) distinctly stated that he had no intention to insult the authority of the Court—and by himself and counsel, asked the Court to go into the whole case, which was then refused ; and they further asked the Supreme Court to come to some decision on the question of contempt, but none was given by the Court at that term—on which this affiant was required to enter into a recognisance of $500, as is his recollection, to appear at the next Supreme Court. In the meantime this affiant was elected a State Senator, and before the then next term of the Supreme Court, he re-signed his office of Judge, not with a view to avoid the effects of the attachment, but with a single intention to aid in the legislative coun-sels of the State. The question was raised by Mr. Gatewood, this affiant's counsel, whether the whole subject ought not to be dis-missed, as the answer purged this affiant of any contempt, and also, that in accepting another office, it was out of his power to comply with the mandate of the Supreme Court, that is, to sign the bill of exceptions set forth. This affiant then, or during the winter, and since the addition of Judges, so understood the Supreme Court, that they would hear another argument in the case before any de-cision was made, which this affiant is informed was not had. This affiant believes, and so states the facts, that if this case could be fully heard, that the Supreme Court would see no intention to contemn its mandates, but that much, if not all, has arisen from misapprehension of the Supreme Court and this affiant on the one hand, and misrepresentation and ill blood, as this affiant believes, on the other, in pressing this matter beyond any former precedent.

The People v. Pearson.

Such being the belief of this affiant, he now trusts that the Supreme Court will not refuse him an opportunity to wipe out the reproach sought to be cast on him by those who have pressed this matter upon the Supreme Court, in a way which has precluded this affiant from meeting the merits of the case, as he always intended to do ; and if, in case he was wrong in his views of the law of jurisdiction, he then intended, and at all times intends to yield to the laws of his country. But if this opportunity is not granted him, knowing the facts as he does, he will be compelled to believe that privileges granted to the humblest citizen in our courts (his day in Court,) has been denied to him in this case.    JOHN PEARSON."

"Sworn to before me, this 15th Dec. 1842.

" E. PECK, C. S. C."

*Per curiam :* (1) The Court has duly considered the motion for re-hearing, and have come to the conclusion that it must be denied. We have re-examined the decision given in this case, and are fully satisfied with it.

There is another reason why the re-hearing cannot be granted : The motion for the re-hearing was not made until the second term of the Court, after the opinion was delivered. No sufficient reason was shown why this motion was not made at an earlier period. To permit parties to come into Court, several times after a judgment is rendered, and ask for, and obtain a re-hearing, would be to render the decisions of the Court uncertain, and leave the rights of the parties unsettled. At a former term of this Court, a motion was made for a re-hearing of several cases, some of which were decided two or three years, and some as long as seven years before. This proceeding was wholly irregular, and was not tolerated by the Court, and the motions were consequently denied.

There was a rule adopted several years since, which seems to have been neglected to be entered, " That motions for a re-hearing must be made at the same term of the Court at which the opinion is delivered."

The Court is of the opinion that it is safest and proper to abide by such a rule. · The motion for a re-hearing must therefore be denied.

*Motion denied.*

(1) LOCKWOOD, Justice, was not present when this motion was made, and gave no opinion.